1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CASE NO. 06cr1948 BTM |
|---|---|
| Plaintiff, | **ORDER RE:** |
| vs. | **(1) DEFENDANT'S MOTION TO DISMISS OR SUPPRESS BASED ON VIOLATION OF JUDGE HOUSTON'S PROTECTIVE ORDER** |
| GUADALUPE FELIX, JR., | **(2) DEFENDANT'S MOTION TO DISMISS FOR VINDICTIVE PROSECUTION;** |
| Defendant. | **(3) DEFENDANT'S STANDING TO OBJECT TO SEARCH** |
| | **(4) GOVERNMENT'S MOTION TO COMPEL DEFENDANT TO PROVIDE A DNA SAMPLE** |

    Defendant Guadalupe Felix, Jr. is charged with possession, with intent to distribute, of 28.4 grams of methamphetamine on October 5, 2005. Currently pending before the Court are a number of pretrial motions filed by Defendant and one discovery motion filed by the Government. At a motion hearing on November 3, 2006, the Court requested further briefing on a number of issues, including: (1) Defendant's motion to dismiss or suppress based on the Government's alleged violation of Judge Houston's protective order governing the use of a DNA sample obtained in another criminal matter relating to Defendant's arrest on October 29, 2005; (2) Defendant's motion to dismiss for vindictive prosecution; (3)

Defendant's standing to challenge the legality of the search of the bedroom in which he, and the methamphetamine he is accused of possessing, were found; and (4) Government's motion to compel Defendant to provide a new DNA sample.

**I.   DEFENDANT'S MOTION TO DISMISS OR SUPPRESS BASED ON THE GOVERNMENT'S VIOLATION OF JUDGE HOUSTON'S PROTECTIVE ORDER**

The Court finds that the Government may not make any use of the DNA sample in this case because Judge Houston's order, entered in Case No. 05cr2200, expressly prohibits utilization of the DNA sample in any case other than the one before him. Thus, Defendant's request to suppress the DNA evidence is rendered moot because Judge Houston's order, which remains in effect, simply precludes the use of the DNA evidence. Accordingly, the Court **DENIES** Defendant's request to suppress the DNA evidence in this case for violation of the protective order but rules that the **Government may not utilize** that evidence in this case unless Judge Houston alters his prior protective order to allow for such use. Defendant has also requested that this Court dismiss the indictment in this case because it is tainted with the Government's violation. Finding the indictment free of impropriety, the Court **DENIES** this request as well.

     A.   <u>The Government's Use of the DNA Sample in This Case</u>

On May 19, 2006, Judge Houston held a motion hearing in a criminal case brought against Defendant on drug possession, assault and flight charges relating to an incident that occurred at the United States border on October 29, 2005. In response to the Government's request to compel Defendant to provide a DNA sample, Judge Houston agreed to grant the motion subject to the following protective order: "The DNA sample shall be utilized only for purposes of this case and should not be maintained by the Government otherwise." (Tr. 5/19/06 Hearing in 05cr2200 at 23.)

The Court has reviewed the transcript of the grand jury proceedings in this case and finds that the Government's claim that it did not use the DNA evidence in obtaining an indictment in this case is correct. The Government has previously produced an August 29,

2006 report indicating that DNA present on the glass pipe found in the same pouch that contained the methamphetamine in question matched the DNA from the saliva sample from Defendant. However, no reference to this evidence was made in the grand jury proceedings.

Nonetheless, this does not mean that the Government has not "utilized" this evidence in relation to this case, either indirectly or directly. In particular, the timing of the grand jury's indictment – only three days after the issuance of the DNA laboratory report – makes it likely that the Government's decision to seek an indictment was substantially influenced by its receipt of the DNA evidence. In addition, the Government clearly used the DNA evidence directly in its opposition to Defendant's motion to revoke the detention order and set conditions for Defendant's pretrial release, which was heard before this Court on October 10, 2006. In that hearing, the Government affirmatively made reference to the DNA evidence when it made the following statement regarding the weight of the evidence: "we have additional testimony from occupants of the room that will be able to provide additional evidence to tie the defendant to the bag, *as well as physical evidence that comes from the bag to tie the defendant to the bag.*" (Tr. 10/10/06 Bail Appeal Hearing at 11 (emphasis added).) When asked by the Court about this physical evidence, the Government explained that DNA samples taken from inside a glass pipe, which was found in the same pouch as the methamphetamine, match the Defendant's DNA. (Id. at 11-12.) Later in the same hearing, the Government made reference to this same evidence again when it argued that Defendant's past parole violations support detention:

> Again, he is violated. He is violated in 2004, even after that conviction, of another parole violation, and here we are again before the court. *October 5th he's at the very least smoking a pipe that contains methamphetamine*, and at worst in possession of a distributable quantity of methamphetamine.

(Id. at 20 (emphasis added).) While the Government seems to argue in its November 21 supplemental response that it only disclosed the DNA evidence in response to questioning from the Court, this contention is not supported by the record. The Court's questioning came in response to Government counsel's statements about physical evidence which would tie the bag of methamphetamine to Defendant – a thinly veiled reference to the DNA evidence

that was explicitly confirmed in counsel's response to the Court's inquiry.

Moreover, it is clear from the Government's request to perform a new DNA swab of the Defendant that it intends to present DNA evidence as part of its case. Judge Houston's order on this issue is clear. It specifically prohibits the Government from making any use of the previously obtained DNA sample in any case other than the one pending before Judge Houston. Proper regard for judicial comity prevents this Court from simply disregarding an order of another court and, accordingly, this Court cannot allow the Government to utilize the DNA sample taken pursuant to Judge Houston's order. Any application to amend the order must be made to Judge Houston. If Judge Houston amends the protective order that he previously entered to allow use of the DNA sample in this case, then it may be admissible. However, under the current strictures, the Government's use of the DNA sample for any purposes in relation to this case is simply prohibited by Judge Houston's order.

B.   Dismissal of the Indictment

Defendant has moved for the dismissal of the indictment in this case because of the Government's improper use of the DNA evidence. The Court has already explained above that the Government did not present the DNA evidence to the grand jury and, while it seems clear that the decision to seek an indictment may have resulted from the Government's receipt of the DNA test results on August 29, the indictment itself appears to be "free from the substantial influence of [the] violations." Bank of Nova Scotia v. United States, 487 U.S. 250, 256 (1988) (citing United States v. Menachik, 475 U.S. 66, 78 (1966)). As the Supreme Court has explained, where evidence has been gained in violation of a defendant's rights under the Constitution, federal statutes, or federal rules of procedure, the appropriate remedy is the exclusion of such illegally obtained evidence. See United States v. Blue, 384 U.S. 251, 255 (1966). However, "the remedy does not extend to barring the prosecution altogether. So drastic a step might advance marginally some of the ends served by exclusionary rules, but it would also increase to an intolerable degree interference with the public interest in having the guilty brought to book." Id.; accord United States v. Morrison, 449 U.S. 361, 365-66 (1981) ("The remedy [for a constitutional violation] in the criminal proceeding is limited to

denying the prosecution the fruits of its transgression.")

Dismissal of the indictment is inappropriate even if the Government's violation may have been deliberate. The Supreme Court reversed a decision dismissing a criminal indictment where government agents, knowing that the defendant had retained counsel, sought to obtain her cooperation in a related investigation and met with her without the knowledge or consent of her counsel. Morrison, 449 U.S. 361. The agents in Morrison went so far as to disparage the defendant's counsel and suggest that she could be better represented – behavior which the Court described as "egregious." Id. at 362, 367. Nonetheless, the Court found that the Sixth Amendment violation, if any, represented by the agents' actions, did not prejudice the ability of defendant's counsel to provide adequate representation in the proceedings. Id. at 366. Accordingly, there was no "justification for interfering with the criminal proceedings . . ., much less the drastic relief [of dismissal of the indictment]." Id. at 366-67.

Similarly, in the case at bar, the Government's violation of Judge Houston's order, even if deliberate, does not require the drastic relief of dismissal of the indictment. This is true even if the Government's use of the DNA sample evidence in this case does, as Defendant argues, constitute a Fourth Amendment violation because Judge Houston's order was tantamount to a limited search warrant that the Government failed to adhere to. See Morrison, 449 U.S. at 366 ("[W]e have not suggested that searches and seizures contrary to the Fourth Amendment warrant dismissal of the indictment.") Since the Government improperly referred to the DNA evidence in the October 10, 2006 detention hearing, "denying the prosecution the fruits of its transgression," in this instance, can be accomplished by reopening the detention proceedings and engaging in a de novo hearing in which the Government refers only to properly admissible evidence. If Defendant wishes to file a motion for such a new detention hearing, the prompt reconsideration of the earlier decision will be sufficient to remedy any continuing prejudice suffered by the Defendant because of the Government's prior violations.

### C. Suppression of the DNA Evidence is Moot

Defendant argues that suppression of the DNA evidence is required because the Government's violation of Judge Houston's protective order renders the previous DNA swabbing of Defendant a search which, because it was beyond the bounds of the "limited search warrant" issued by Judge Houston's order, violates the Fourth Amendment. (Def.'s 10/17/06 Mem. at 4.) However, as was explained above, under the present state of the protective order, the Government cannot utilize the DNA sample because of the limitations placed upon it by Judge Houston. Thus, suppression of the DNA evidence is not required.

While Defendant is still free to argue that the Government should be sanctioned for use it has already made of the DNA sample in violation of Judge Houston's order, that argument is appropriately addressed to Judge Houston. However, as of this time, no permanent prejudice has resulted to Defendant in this case by the Government's limited use of the DNA evidence. Accordingly, Defendant's motion to suppress is denied.

## II. DEFENDANT'S MOTION TO DISMISS FOR VINDICTIVE PROSECUTION

Defendant has moved to dismiss the indictment on the grounds that the Government has engaged in impermissible vindictive prosecution. In particular, Defendant claims that the Government decided to bring this case in order to punish Defendant for standing upon his right to vigorously litigate the charges in the other proceeding before Judge Houston. The Court has thoroughly considered the arguments presented in the briefs submitted by both parties on this issue. For the reasons expressed below, Defendant's motion is **DENIED**.

To begin, the Government claims that its actions in filing the indictment in this case cannot, without more, be presumed to be a vindictive response to Defendant's assertion of his rights in the proceedings before Judge Houston. This is correct because the Government's choice to seek an indictment was a decision made prior to trial in the other matter and the two matters do not arise out of the same operative set of facts. See, e.g., United States v. Martinez, 785 F.2d 663, 669 (9th Cir. 1986) (if the "second charge is unrelated to the first, the presumption does not arise"); see also United States v. Goodwin,

1  457 U.S. 368 (1982); United States v. Hernandez, 80 F.3d 1253 (9th Cir. 1996). But see
2  United States v. Groves, 571 F.2d 450, 454 (9th Cir. 1978) (the fact that the alleged vindictive
3  prosecution charge involved a different crime relating to a completely separate fact situation
4  from original charge deemed not controlling). As the Supreme Court explained in Goodwin:

> There is good reason to be cautious before adopting an inflexible presumption of prosecutorial vindictiveness in a pretrial setting. In the course of preparing a case for trial, the prosecutor may uncover additional information that suggests a basis for further prosecution or he simply may come to realize that information possessed by the State has a broader significance.

457 U.S. at 381. However, declining to apply a presumption of vindictiveness does not end the inquiry in this case.

Defendant has claimed that the Government has actually engaged in vindictive conduct. See Goodwin, 457 U.S. at 384 ("[A] defendant in an appropriate case might prove objectively that the prosecutor's charging decision was motivated by a desire to punish him for doing something that the law plainly allowed him to do."). However, Defendant has presented no evidence of actual vindictiveness from which this Court could find that the Government's motivation for bringing this indictment was improper.

The Government, relying upon, *inter alia*, Bordenkircher v. Hayes, 434 U.S. 357 (1978), contends that its decision to bring an additional indictment against Defendant was a permissible employment of leverage in the context of pretrial plea negotiations. The Government's statement of the law is correct and the Court is not convinced that the facts in this case make the rule inapplicable here. While there is no evidence that the Government affirmatively warned Defendant of its intention to file further charges if he chose not to enter a plea agreement, the record before the Court reveals that the indictment was in fact used in conjunction with a plea offer. As the Supreme Court noted in Bordenkircher, "in the 'give-and-take' of plea bargaining, there is no [unconstitutional] element of punishment or retaliation so long as the accused is free to accept or reject the prosecution's offer." 434 U.S. at 363. If the Government simply decided to punish Defendant by bringing this additional charge, outside of the context of good-faith plea negotiations, this would be an impermissible

vindictive prosecution. Cf. United States v. Ruesga-Martinez, 534 F.2d 1367, 1370 (9th Cir. 1976). However, Defendant has not made a prima facie showing that this is what occurred here.

The evidence referred to by the Government of a pretrial plea offer is credited by this Court. Defendant argues that the Government's plea offer, which was transmitted to defense counsel via facsimile on Saturday September 9th with an expiration of Sunday September 10th, was not a good-faith offer and was merely employed by the Government to afford the cover of plea negotiations to its vindictive actions in filing this indictment. However, the Court notes that it was not unreasonable for Government counsel to believe that defense counsel would be working in his office over that weekend in preparation for trial before Judge Houston, which was to begin on Monday morning. As Judge Houston expressed to defense counsel at a hearing before him on Friday, September 8th: "I know in the throes of trial preparation, you'll be preparing over the weekend anyway . . .." (Tr. 9/8/06 Hearing in 05cr2200 at 96.) The short window for acceptance of the Government's offer – only one day – was reasonable in light of the fact that the trial before Judge Houston was beginning Monday morning. In addition, if defense counsel had been interested in pursuing this plea bargain, he was free to ask on Monday morning for additional time to discuss and consider the offer with his client in light of the fact that he did not receive the facsimile over the weekend. Defense counsel's failure to even discuss the offer with his client before the trial began on Monday morning evidences his disinterest in the proposed plea agreement. While acknowledging the protestations of the Defendant, the Court is not convinced that the Government's offer was other than a good-faith effort to resolve these cases prior to trial.

The Government's decision to indict first and then engage in plea negotiations is similar enough to the conduct deemed permissible in Bordenkircher. As the Supreme Court has explained:

> [T]he Court in *Bordenkircher* held that "additional" charges *may* be used to induce a defendant to plead guilty. Once that conclusion was accepted, it necessarily followed that it did not matter whether the "additional" charges were obtained in the original indictment or merely threatened in plea negotiations and obtained once those negotiations broke down. In the former situation, the prosecutor could be said

>simply to have "anticipated" that the defendant might refuse to plead guilty and, as a result, to have placed his "threat" in the original indictment.

Goodwin, 457 U.S. at 380 n. 10. Like the permissible scenario discussed in Goodwin, in the present case, Government counsel may not have warned Defendant in advance of his intention to use an additional charge to increase his bargaining leverage. Rather, he chose to indict first and bargain later. It was not vindictive to obtain an additional indictment before proceeding with further plea negotiations, which then encompassed both cases.

In addition, Defendant has argued that the Government may have chosen to seek this indictment only because it realized that Defendant was not subject to as severe a punishment for his possession of drugs in the case before Judge Houston as it previously anticipated. (Def.'s 11/20/06 Mem. at 16.) The Government's belief that Defendant's total conduct, on both occasions, merited a higher sentence than he would likely receive in the pending matter constitutes an acceptable basis upon which to seek an indictment for uncharged criminal conduct. As the Supreme Court has recognized: "A prosecutor should remain free before trial to exercise the broad discretion entrusted to him to determine the extent of the societal interest in prosecution. An initial decision should not freeze future conduct." Goodwin, 457 U.S. at 382.

Accordingly, since a presumption of vindictiveness is not called for in this instance and Defendant has not made a prima facie showing of actual vindictiveness, Defendant's motion to dismiss based upon vindictive prosecution is denied.

**III.   DEFENDANT'S STANDING TO CHALLENGE THE LEGALITY OF THE SEARCH WHICH RESULTED IN THE DISCOVERY OF THE METHAMPHETAMINE**

Defendant has argued that he has standing to challenge the search of his girlfriend's bedroom, in which the pouch containing methamphetamine was found, because he was an overnight guest there at the time of the search. See Minnesota v. Olson, 495 U.S. 91 (1990). In its November 3, 2006 Response and Opposition, the Government indicates that Defendant "may have standing" to move to suppress the evidence seized from the bedroom. It argued,

however, that Defendant was required to surmount three separate "standing hurdles." (Govt's 11/3/06 Resp. and Opp'n at 10.) First, the Government claims that Defendant must show he was an overnight guest. In his supplemental briefing to this Court, Defendant has submitted declarations from both his girlfriend and her mother indicating that he was an overnight guest at their home at the time of the search. (Def.'s 11/20/06 Supp. Briefing Ex. O.) As the Government chose not to further supplement its briefing on this subject in response to this Court's invitation, the Court accepts the declarations submitted by Defendant as the requisite proof that the Government referred to in its earlier brief.

The Government's second "hurdle" refers to Defendant's denial of knowledge of the pouch after his arrest. The Government appears to be arguing that Defendant cannot object to a search of a pouch that he expressly claims he knows nothing about, because he could have no legitimate expectation of privacy in an item of which he is unaware. However, the Ninth Circuit has held that the Government cannot rely upon a Defendant's disavowal of ownership to defeat standing, while simultaneously charging the Defendant with possession, without regard to the underlying facts. See United States v. Issacs, 708 F.2d 1365, 1367-68 (9th Cir. 1983). In this case, Defendant had a reasonable expectation of privacy in the bedroom in which he was an overnight guest that allows him to challenge the search of the entire bedroom, including a pouch found therein, regardless of his protestations of ignorance regarding the pouch itself. Accordingly, this argument is without merit.

Lastly, the Government argues that Defendant's status as a parolee may limit his reasonable expectation of privacy such that he cannot complain about a search by officers, even if they do not know about his parole status. The Supreme Court made no such ruling in the case of Samson v. California, 126 S. Ct. 2193 (2006), which was cited by the Government as authority for this contention. Moreover, the Ninth Circuit has ruled that a suspect's parolee status cannot be used to justify a search of that suspect if the officers did not know he was a parolee at the time of the search. Moreno v. Baca, 431 F.3d 633 (9th Cir. 2005). The Government has offered no evidence that the searching officers were aware that Defendant was on parole. Accordingly, Defendant's status as a parolee at the time of the

search of his girlfriend's bedroom does not limit his standing to challenge that search as an overnight guest in this case.

The Court finds that Defendant has standing to challenge the search and his motion to suppress the evidence found within the bedroom shared by his girlfriend and her sister, in which he was an overnight guest, will be heard at the **evidentiary hearing scheduled for February 1, 2007 at 1:30pm**.

### IV.    THE GOVERNMENT'S MOTION TO COMPEL DEFENDANT TO PROVIDE A NEW DNA SAMPLE

The Government has argued that, even if the DNA sample previously taken from Defendant in the proceedings before Judge Houston cannot be utilized, the Government is entitled to a new DNA sample. The Government claims that: (1) it is entitled to compel Defendant to provide a new sample because identifying information may not be suppressed; and (2) it would inevitably discover this evidence because Defendant, as a convicted felon, was required to provide the California Department of Justice with a DNA sample which may be made available to the FBI. (Govt's 11/2/06 Mem. at 3-4.)

Contrary to the Government's contentions regarding the impermissibility of suppressing a Defendant's identity, the taking of a DNA sample from a Defendant is a search and, as such, the Fourth Amendment requires that it be reasonable. See United States v. Kincade, 379 F.3d 813, 821 n. 15 (9th Cir. 2004) (en banc) ("The compulsory extraction of blood for DNA profiling *unquestionably* implicates the right to personal security embodied in the Fourth Amendment, and thus constitutes a 'search' within the meaning of the Constitution.") (emphasis added). The Government's claim that the Fourth Amendment is not implicated because the DNA sample in this instance may be procured by the use of a swab taken from inside the Defendant's mouth, rather than by taking a sample of his blood, is unavailing. Both methods require a "physical intrusion" upon Defendant's bodily privacy and, thus, both are searches that necessarily implicate the Fourth Amendment. C.f. Skinner v. Railway Labor Executives' Association, 489 U.S. 602, 616 (1989) ("In light of our society's concern for the security of one's person, . . . it is obvious that this *physical intrusion*,

penetrating beneath the skin, infringes an expectation of privacy that society is prepared to recognize as reasonable.") (emphasis added); Barlow v. Ground, 943 F.2d 1132, 1137 (9th Cir. 1991) ("*Intrusions into the human body* . . . are searches subject to the restrictions of the fourth amendment.") (emphasis added).

In addition, the doctrine of inevitable discovery has no application in this instance as the Government is really asking that the Court authorize a new search for evidence, which could possibly be obtained through other legal means, simply because it would be more convenient for the Government.  The inevitable discovery doctrine protects against the permanency of obligatory suppression rules when evidence would otherwise have become properly discoverable, see Nix. v. Williams, 467 U.S. 431 (1984), it does not exist so that the Government may "save resources."

A motion for an order compelling Defendant to provide a new DNA sample is more properly considered as a request for a search warrant and, as such, any future request for a DNA sample shall be made in the form of an application for a search warrant.  See Schmerber v. California, 384 U.S. 757, 770 (1966) ("Search warrants are ordinarily required for searches of dwellings, and, absent an emergency, no less could be required where intrusions into the human body are concerned."); c.f. Kincade, 379 F.3d at 822 ("Ordinarily the reasonableness of a search depends on governmental compliance with the Warrant Clause, which requires authorities to demonstrate probable cause to a neutral magistrate and thereby convince him to provide formal authorization to proceed with a search by issuance of a particularized warrant.")  Such an application is properly addressed to a magistrate judge, not this Court.  Not only does Federal Rule of Criminal Procedure 41, which establishes the procedures for obtaining a search warrant, contemplate that warrant requests be made to magistrate judges, but a neutral magistrate is particularly useful in this case because he or she will be unaware of the existence of the previous DNA match.

Accordingly, the Government's motion to compel Defendant to provide a new DNA sample is **DENIED** without prejudice.

## V. CONCLUSION

Defendant's motion to dismiss or suppress based on the Government's violation of Judge Houston's protective order is **DENIED** without prejudice. However, the Government may not make any use of the DNA evidence previously obtained pursuant to Judge Houston's order unless Judge Houston amends the order or grants an exception to allow such use in this case. The Defendant's motion to dismiss based upon vindictive prosecution is **DENIED**. The Government's motion to compel Defendant to provide a new DNA sample is **DENIED** and the Government is directed to address any renewed request for a DNA sample to a magistrate judge in the form of an application for a search warrant. Since the Defendant has standing to challenge the search, all parties are directed to appear before this Court for an **evidentiary hearing** on Defendant's motion to suppress on **February 1, 2007 at 1:30pm**.

**IT IS SO ORDERED.**

DATED: January 9, 2007

*/s/ Barry Ted Moskowitz*

Hon. Barry Ted Moskowitz
United States District Judge